UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PEGGY SMITH,

        Plaintiff,

vs.                                      Case No.: 6:14-CV-2117-ORL-40-TBS

ARS NATIONAL SERVICES INC.,

        Defendant.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, PEGGY SMITH, ("Plaintiff" or "Smith"), by and through her counsel and pursuant to Rule 27(a)(3), *Fed.R.Civ.P.*, files this Response to Defendant's Motion to Dismiss Plaintiff, Peggy Smith's ("Plaintiff" or "Smith"), Complaint and states:

## I.  INTRODUCTION

SMITH filed the above-styled action against ARS pursuant to Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et. seq.* ("FDCPA") alleging ARS' violation of 15 U.S.C. §1692c(c) for failing to cease communication with SMITH as required. (Complaint, ¶25). 15 U.S.C. §1692c(c) specifically provides as follows:

> "**(c) Ceasing communication.**  If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except— **(1)** to advise the consumer that the debt collector's further efforts are being terminated; **(2)** to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or **(3)** where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy. If such notice from the consumer is made by mail, notification shall be complete upon receipt."

1

SMITH particularly asserts in the Complaint that "Defendant sent Plaintiff a written request for payment of an alleged consumer debt." (Complaint, ¶17).  As support confirming the allegation, a true and correct copy of the letter ("Refusal to Pay Notice") is attached to the Complaint "The amount you're claiming that I owe does not appear to be correct [sic.] therefore I refuse to pay same.  Thank you.  Peggy Smith 9/12/2014" (Complaint, Exh. A).[1]  SMITH further asserts in the Complaint that "after receiving Plaintiff's written notice of refusal to pay, Defendant, in its capacity as agent for and on behalf of FIA Card Services, N.A. and Bank of America, N.A., failed to cease communications to Plaintiff regarding the alleged debt in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692c(c)." (Complaint, ¶25).  A copy of the October 22, 2014 communication ("Violation Letter") sent by ARS after SMITH'S Refusal to Pay Notice informing of her refusal to pay is attached to the Complaint as well. (Complaint, Exh. B).  ARS' Violation Letter stated as follows:

> "Dear Sir/Madam:
>
> Are you tired of dealing with attempts to collect on this account? Would you like to resolve this account once and for all? ARS would like to assist you during these difficult times and we are willing to consider any payment arrangement that works for you, including settling the account for less than the balance owed.
>
> Call us or visit us on the web today at www.PayARS.com. For your convenience, ARS also offers "Quick Check" by phone, Western Union "Quick Collect" (Code City: ARS 30079777), and Moneygram "Express Payment" (Receive Code: 5161).
>
> Wouldn't it feel great to finally resolve this account?
> Sincerely,
> April Edwards x4028
> Account Representative"

---

[1] Exhibits are part of a pleading "for all purposes." Fed.R.Civ.P. 10(c).

The October 22, 2014 Violation Letter to SMITH from ARS did not advise SMITH that ARS was terminating further collection efforts; the Violation Letter did not notify SMITH that ARS may invoke any specified remedy; and the Violation Letter did not notify SMITH that ARS intended to invoke a specified remedy.  Although not an issue in the above-styled action, it is pertinent that ARS' letter does not respond to SMITH'S communication in any manner.  ARS subsequently filed its Motion to Dismiss arguing that SMITH'S Refusal to Pay Notice did not constitute a notice of refusal to pay and that ARS' communication at issue was not in violation. (Motion to Dismiss, *3-8).

## II.   ARGUMENT

### A.  SMITH'S LETTER PROPERLY NOTIFIES ARS TO CEASE COMMUNICATION PURSUANT TO 15 U.S.C. § 1692c(c).

SMITH must allege (1) plaintiff is a consumer, (2) defendant is a debt-collector, (3) defendant attempted to collect a consumer debt, and (4) defendant violated a statutory provision in its collection activities. 15 U.S.C. § 1692. *See also Izquierdo v. Easy Loans Corp.*, No. 2:13-CV-01032-MMD, 2014 WL 1091861, at *2 (D. Nev. Mar. 18, 2014) reconsideration denied, No. 2:13-CV-1032-MMD-VCF, 2014 WL 2803285 (D. Nev. June 19, 2014).  Plaintiff has indisputably done just this.  SMITH alleges more than sufficient facts in her pleadings that:

   (1) SMITH is a consumer (Complaint, ¶5);

   (2) ARS is a debt collector (Complaint, ¶¶6, 9);

   (3) ARS attempted to collect a consumer debt from her (Complaint, ¶¶15, 17); and

   (4) ARS tried to collect from her after she unambiguously refused to pay this debt in writing, thereby violating the Act. (Complaint, ¶¶15, 17, Exhs. A, B);

Despite ARS' efforts in its memorandum to create complexity, confusion, and ambiguity over these essential facts, nothing can change them.

ARS concedes that when considering a Rule 12(b)(6) motion, the Court must accept as true all facts set forth in plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVeeToons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). The threshold for a complaint to survive a motion to dismiss is "exceedingly low" and the complaint must be viewed in a light most favorable to the plaintiff. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir. 1985); and *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). Additionally, The FDCPA is part of the Consumer Protection Act, and as such, should be liberally construed in favor of the consumer to effect its broad remedial purpose. *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 878 (7th Cir. 1976); and *Florence v. National Sys.*, 1983 U.S. Dist. LEXIS 20344, 13 (N.D. Ga. Oct. 14, 1983). SMITH'S Complaint easily surpasses the necessary threshold, specifically identifying ARS' violation of 15 U.S.C. §1692c(c) for failing to cease communication with SMITH as required and attaches true and correct copies of the actual evidence of the violation. (Complaint, Exhs. A, B).

SMITH'S Refusal to Pay Notice to ARS which reads in part, "…I refuse to pay....," mirrors almost exactly a portion of the language in 15 U.S.C. §1692c(c) which requires that a debt collector cease communications "[i]f a consumer notifies a debt collector in writing that the consumer **refuses to pay** a debt**….**"[2] (Complaint, Exh. A). SMITH'S Refusal to Pay Notice contained no request that ARS verify the alleged debt, although she did qualify the basis for her refusal to pay, "[t]he amount you're claiming that I owe does not appear to be correct [sic.] therefore I refuse to pay same." SMITH'S inclusion of the basis for her refusal to pay the debt in the Refusal to Pay Notice does not diminish or qualify the notice of refusal set forth in her

---

[2] Emphasis added.

4

letter. *Barnes v. Seterus Inc.,* 2013 WL 6834720 (S.D. Fla. Dec. 26, 2013)(motion to dismiss denied regarding 15 U.S.C. §1692c(c) violation, finding sufficient language requiring ceased communications pursuant to letter stating "I will not remit any type of payments to your company until you release escrow and reinstate my loan back to the original terms and conditions…I am requesting you fix my credit report status and stop ASAP with the harassing phone calls daily and on the weekends."); *see also Bishop v. I.C. System, Inc.,* 713 F.Supp.2d 1361, 1366 (M.D. Fla. 2010)("Any further correspondence from your organization or any other collection agency will be discarded or returned to you unopened," considered sufficient language to require debt collector to cease communications.  The notice letter stated the reason for refusal to pay and left open the possibility that the alleged debtor might reconsider his refusal to pay the debt if the debt collector contacted him directly with a non-frivolous claim. The Court specifically held that the "fact that the letter does not literally ask I.C. System to cease communication does not deprive the letter of its plain meaning.") Neither does SMITH'S statement that she disputes the amount qualify as a request for information of any kind.[3]

ARS was bound by 15 U.S.C. §1692c(c) to cease communications with SMITH regarding the alleged debt after receipt of SMITH'S Refusal to Pay Notice even though SMITH did not specifically request that ARS cease communications.  "If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt….," except to advise the consumer that communications will cease, the debt collector may and/or intends to invoke

---

[3] ARS inappropriately states that there was additional correspondence to SMITH prior to its October 22, 2014 Violation Letter which "did verify the debt" although there is no record evidence of same.  If this is, in fact the case, such correspondence with constitute another violation of 15 U.S.C. §1692c(c) by ARS demonstrating a pattern in this regard.

specified remedies. 15 U.S.C. §1692c(c). ARS' reliance upon the holding in *Graveling v. Sirote & Permute, P.C.,* WL 5293674 (N.D. Ala Oct. 15, 2014) is misplaced in that the Gravelings specifically stated in their letter to the debt collector that the debt collector "either 'prove the contract' *or* 'cease communicating....'." SMITH, in her Refusal to Pay Notice to ARS, includes no conjunction denoting any alternative or choice between actions. *Graveling* at 3. ARS' characterization of SMITH'S handwritten Refusal to Pay Notice dated September 12, 2014 remains erroneous as does its argument that it did not receive effective notification pursuant to 15 U.S.C. §1692c(c) from SMITH. Consequently, ARS' Motion to Dismiss SMITH'S Complaint which is based in its failed argument claiming lack of notice of dispute of the alleged debt has no basis.

**B. ARS' VIOLATION LETTER DOES NOT QUALIFY AS AN EXCEPTION UNDER 15 U.S.C. § 1692c(c).**

ARS' characterization of its Violation Letter is as inaccurate as is its characterization of SMITH'S Refusal to Pay Notice. ARS' argues that its October 22, 2014 Violation Letter "is not an attempt to collect upon a debt, but rather is more akin to a type of settlement offer" that ARS invoked as a "remedy". Court interpretations of 15 U.S.C. § 1692c(c) have well-established that *any* communication from a debt collector following a cease and desist letter or a refusal to pay letter would violate the FDCPA providing that it does not fall under one of the three enumerated exceptions stated in 15 U.S.C. § 1692c(c). *See generally, Salazar v. MFP Inc.*, 847 F.Supp.2d 1329 (M.D. Fla. 2012); *Ramirez v. Apex Financial Management, LLC*, 567 F.Supp.2d 1035 (N.D. Ill. 2008). ARS relies upon the United States Sixth Circuit Court of Appeals' extremely broad and strained interpretation of "remedy", allowing any communication that discusses attempts to resolve the debt if the debt collector "ordinarily" invokes such remedy; in *Lewis v.*

6

*ACB Business Services, Inc.,* 135 F.3d 389 (6th Cir. 1998), the Sixth Circuit Court determined that a communication requesting a debtor to contact the debt collector to discuss payment terms constituted notification of a specified remedy. *See also Garcia v. Gurstel Chargo, P.A.,* 2013 4478919 *1 (D. AZ Aug. 21, 2013) (this Ninth Circuit case correctly identifies remedies such as "court action" or "arbitration" but then relies upon *Lewis* to reach a result contrary the definitions it acknowledged). However, Courts have specifically distinguished *Lewis* regarding facts similar to those in the instant case and have found that a non-specific suggestion that a payment plan may or will be accepted does not fall with the exceptions set forth in 15 U.S.C. § 1692c(c) defining a "specified remedy". *Montgomery v. Shermeta*, 885 F. Supp. 2d 849, 2012 U.S. Dist. LEXIS 117519 (W.D. Mich. 2012)(specifically setting forth the reasons that *Lewis* does not apply – "The May 2011 Letter may not be an "abusive" communication; it is not threatening, it is not deceiving, and it was not one of many messages sent in a pattern of harassment. However, the FDCPA is a strict liability statute. *See [Federal Home Loan Mortgage Corp.] v. Lamar,* 503 F.3d at 513. The [debt collector] has not established on this record that the May 2011 Letter falls within the (c)(2) exception. Unlike the letter in *Lewis,* no payment options are provided. In other words, there are no "specified remedies" identified in the letter. Instead, Montgomery is invited to call the Law Firm to discuss those options." <u>Montgomery</u> @ 856.); *see also Marino v. Hoganwillig, PLLC,* 910 F. Supp. 2d 492, 499-500  2012 U.S. Dist. LEXIS 57496, 2012 WL 1424733 (W.D.N.Y. 2012)(the Court found that communication stating specifically, "Please forward your check in the amount of $620.00, made payable to HoganWillig, with [sic] ten (10) days of receipt of this notice, or contact Cindy at (716) 932-6565, to make arrangements for a payment schedule with our firm. Should we not receive your check or hear from you within said ten (10) days, we will report this account to the credit reporting agencies. Such action may affect

7

your ability to obtain access to various types of credit, including, but not limited to, loans and mortgages." did not fall under any of the 15 U.S.C. x 1692c(c) exceptions because the violating communication, in its appearance as a form letter, merely conveyed information to the debtor that had already been provided and did not actually provide a specified payment plan for consideration and the violating letter was not the first but second communication sent by the debt collector).[4] ARS' letter does nothing more than suggest that a payment plan will be accepted.

Regardless of ARS' assertion that any exception applies to its Violation Letter, whether or not ARS ordinarily invoked such remedy is a question of fact that would need to be addressed by a trier of fact and such a defense is not relevant to the sufficiency of allegations to be considered upon a motion to dismiss. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Hamilton v. State Farm Mut. Auto Ins. Co.,* 2013 WL 5231483 (M.D. Fla.2013) *citing Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In the event that ARS is unable to establish that it ordinarily uses payment reduction as a "specified remedy". SMITH has sufficiently and plainly stated the relief to which is entitled and ARS clearly has notice of the relief sought. *See* Fed.R.Civ.P. 8(a)(2); see also *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007); and *Conley v. Gibson,* 355 U.S. 41, 47 (1957). Aside from the technical compliance sufficient to survive a Motion to Dismiss, *Lewis v. ACB Business Services, Inc.,* upon which ARS relies, advances dangerous logic which should be disregarded in the Eleventh Circuit.

The Sixth Circuit, in determining that a collection letter seeking to negotiate a payment plan, constitutes a "specified remedy" within the exceptions of 15 U.S.C. §1692c(c), allows the

---

[4] ARS, by its own admission in its Motion to Dismiss, sent a prior communication after its receipt of the September 2014 Notice of Refusal to Pay. (Motion to Dismiss, *5, fn. 1).

debt collector to continue contacting a debtor after a refusal to pay so long as the debt collector adds nebulous words to the effect that it will negotiate. Offers to negotiate or set up payment plans cannot be considered remedies; although offers, negotiation and remedies may bear fruit, they are each from different trees. *Black's Law Dictionary* defines "remedy" as "[t]he means by which a right is enforced or the violation of a right is prevented, redressed or compensated. (*citing Long Leaf Lumber, Inc. v. Svolos,* La.App. 258 So.2d 121, 124); alternatively, "remedy" is defined as [t]he means to enforce a right or redress an injury, as distinguished from right, which is well founded or acknowledged claim. (*citing Chelentis v. Luckenbach S. S. Co.,* 247 U.S. 372, 383-384 (1918); or [t]he rights given to a party by law or by contract which that party may exercise upon a default by the other contracting party, or upon the commission of a wrong (a tort) by another party."; or "any remedial right to which an aggrieved party is entitled with or without resort to a tribunal." (*citing* U.C.C. § 1-201.) *Black's Law Dictionary,* *1163 (5th ed. 1979). Conversely, *Black's Law Dictionary* defines an "offer" as [a] manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his asset to that bargain is invited and will conclude it. *Black's Law Dictionary,* *976 (5th ed. 1979). To "negotiate" is "[t]o transact business; to bargain with another respecting a purchase and sale; to conduct communications or conferences with a view to reaching a settlement or agreement. It is that which passes between parties or their agents in the course of or incident to the making of a contract and is also conversation in arranging terms of contract. To communicate or confer with another so as to arrive at the settlement of some matter. To meet with another so as to arrive through discussion at some kind of agreement or compromise about something." (*citing Al Herd, Inc. v. Isaac,* 271 Cal.App.2d 749. *Black's Law Dictionary,* *934 (5th ed. 1979). To again demand payment from a debtor, regardless of whether it is in full or in an offer of a reduced

9

amount is still a demand for payment and provides no information as to what specific remedies the debt collector may or intends to pursue to obtain payment in the event the debtor fails or refuses to make payment.

The Sixth Circuit reasoned in *Lewis* that the "interpretation of § 1692c(c)(2), which would prohibit collectors from sending non-coercive settlement offers as a remedy, is `plainly at variance with the policy of the legislation as a whole.' To hold that a debt collector cannot offer payment options as part of an effort to resolve an outstanding debt, possibly without litigation, would force honest debt collectors seeking a peaceful resolution of the debt to file suit in order to advance efforts to resolve the debt-something that is clearly at odds with the language and purpose of the FDCPA." However, "a court's authority to interpret statutory language is constrained by the plain meaning of the statutory language in the context of the entire statute, as assisted by the canons of statutory construction." *Edison v. Dauberly,* 604 F.3d 1307 (C.A. 11 Fla. 2010). Courts may not elect to adopt other interpretations of statutory language and expand the reach of a statute, as has the Sixth Circuit in *Lewis*, merely to achieve or avoid a particular result. *Edison* at 1309. "We move beyond these methods of statutory interpretation, to legislative intent and policy considerations, only if both the plain meaning of the language and the canons of construction fail to resolve the ambiguity." *Edison* at 1309. The legislature was quite clear in setting forth the exceptions to post-refusal communications under 15 U.S.C. §1692c(c). Had the Legislature intended that one of the exceptions be to make an offer to resolve the debt or to negotiate a payment plan, the exception would have been codified within 15 U.S.C. §1692c(c). As 15 U.S.C. §1692c(c) stands, the only communication a debt collector may initiate with a debtor after receiving a refusal to pay is a notice that it will be terminating future communication, may seek specific remedies of collection and intends to seek specific

remedies of collection. ARS' October 2014 Violation Letter communicated none of these exceptions and, therefore, on its face violates 15 U.S.C. §1692c(c). Moreover, the Federal Trade Commission's statement of general policy on the FDCPA pronounces that a "debt collector's response to a 'cease communication' notice from the consumer may not include a demand for payment, but is limited to the three statutory exceptions." 53 Fed.Reg. 50097, 50104 (Dec. 13, 1988). The FDCPA is a remedial statute and the Court "construe[s] its language broadly, so as to effect its purpose." Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006). "In order to give effect to the Act's intent to protect[] the gullible as well as the shrewd, courts have analyzed the statutory requirements from the perspective of the least sophisticated debtor." Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 298 (3d Cir. 2008) (alteration in original) (citations and internal quotation marks omitted). Accordingly, "any lender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor." Brown, 464 F.3d at 454. ARS' Violation Letter, in demanding "willing to consider any payment arrangement that works for you…. For your convenience, ARS also offers "Quick Check" by phone, Western Union "Quick Collect" (Code City: ARS 30079777), and Moneygram "Express Payment…" clearly demonstrates its intent to seek payment of a debt; if the least sophisticated consumer did not understand this message demanding collection, the bolded and all capitals statement at the bottom, "THIS IS AN ATTEMPT TO COLLECT A DEBT" surely drives the point home. (Complaint, Exh. B). ARS' collection attempt within its Violation Letter is the final of the aforementioned multiple reasons that the Violation Letter fails to fall within any of the three 15 U.S.C. §1692c(c) exceptions and the final reason of the aforementioned multiple reasons why ARS' Motion to Dismiss should be denied.

### III. CONCLUSION

SMITH's September 2014 letter to ARS properly notified ARS of her refusal to pay an alleged debt. ARS' subsequent October 2014 letter to SMITH violated the requirement to cease communications pursuant to 15 U.S.C. §1692c(c). Regardless of ARS' alleged defenses to the Complaint, the Complaint properly states a cause of action, especially when read in the light most favorable to SMITH. Accordingly, Plaintiff, PEGGY SMITH, respectfully requests that the Court enter an order denying Defendant, ARS NATIONAL SERVICES, INC.S, Motion to Dismiss. In the event the Court grant's ARS' Motion, Plaintiff, PEGGY SMITH, respectfully requests that the Court do so without prejudice.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 8, 2015, a true and correct copy of the foregoing was filed via the CM/ECF system and sent to the following party via electronic mail:

Kenneth M. Curtin, Esq.
Adams and Reese, LLP
101 E. Kennedy Blvd.
Suite 4000
Tampa, Florida 32602
kenneth.curtin@arlaw.com
*Attorney for Defendant*

_____
Michael Tierney, Esquire
Florida Bar No. 643475
Michael Tierney, P.A.
918 Beard Avenue
Winter Park, Florida 32789
Telephone: (407) 740-0074
Facsimile: (407) 740-0079
Service: documents@tierneylaw.us
*Attorney for Plaintiff*